## COMMISSIONER OF INTERNAL REVENUE v. FERREE.
### No. 6005.

Circuit Court of Appeals, Third Circuit.

May 29, 1936.

Frank J. Wideman, Asst. Atty. Gen., and Howard P. Locke and Sewall Key, Sp. Assts. to the Atty. Gen., for appellant.

John J. Dougherty and John M. Marshall, both of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In this case the majority of the Tax Board held with the taxpayer that he had a deductible loss in 1929. The minority held otherwise. Both sides filed enlightening opinions. We agree with the majority, and our reasons for so holding we now set forth.

Ferree, the petitioner, owned 1,000 shares of Continental Can, purchased in August, 1929, the certificates of which he kept in a safety deposit box. On December 19, 1929, he sold, through his broker, 200 shares and delivered the certificates for them the next day. On December 27, he instructed his broker to sell the 800 shares "represented by the certificates which remained in his safety deposit box." On December 30, the broker sold 200 and on December 31, 600 shares. Ferree did not deliver the certificates, but left them where they were. On January 31, 1930, Ferree, through the same broker, bought 500 Continental Can shares, and on February 3, 1,000 shares. The broker delivered certificates for 700 shares, which Ferree put in his box with the 800 shares remaining there.

In his income tax return Ferree deducted the loss amounting to $30,317. The Commissioner, however, claimed that the above transaction was a short sale not

completed until the covering purchases in January and February of 1930, and that, therefore, the above loss was not deductible as of 1929. The Board of Tax Appeals upheld the contention of the petitioner that the transaction consisted of a completed sale during 1929 and as such the loss was deductible.

The contention of the Commissioner is based upon the fact that the petitioner did not deliver the 800 shares to the broker, and that the broker, to complete the sale, must have bought or "borrowed" other shares, to deliver to his customer. Thus if the broker did buy or borrow other shares, the Commissioner contends that he did not in fact sell the 800 shares in the petitioner's safety deposit box, but 800 other shares. The Board assumes that the broker did make a delivery to the purchaser as required by the rules of the Stock Exchange.

Four members of the Board dissented from the finding that this was not a short sale.

There is no dispute that "a short sale is a contract for the sale of shares which the seller does not own or the certificates for which are not within his control so as to be available for delivery at the time when, under the rules of the Exchange, delivery must be made." Provost v. United States, 269 U.S. 443, 46 S.Ct. 152, 153, 70 L.Ed. 352; Appleby v. Commissioner, 31 B.T.A. 533, points out that a sale of certain shares on December 30, 1930, existed as of that time, though the certificates were not delivered to the broker until January 6, 1931, and the loss was deductible in 1930.

Under the Sales Act of Pennsylvania, where the taxpayer lived, and the Uniform Sales Act, the intention of the parties governs. Section 19, rule 1 (69 P.S.Pa. § 143, rule 1) for ascertaining intention reads: "Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment or time of delivery, or both, be postponed."

The broker, acting as agent of the petitioner, was authorized to sell the 800 shares identified and was not authorized to sell short. Upon completing the sale, he had a right to demand these identical shares. However, the broker substituted other shares of equal value which was in no way objectionable to the purchaser. The broker still had the right to demand the original 800 shares. However, when the petitioner purchased 1,500 shares of the same stock through him, he merely withheld 800 shares. As the original intention is controlling, these subsequent substitutions do not change the original transaction.

It would be meaningless formality to demand that the petitioner hand over the 800 and receive 800 identical shares. However, if the petitioner had handed over the original 800 shares to the broker in January or February and had taken the entire 1,500 shares he had recently purchased, he would have come within Appleby v. Commissioner, supra.

This petitioner intended to sell these shares in order to take a loss. This is justifiable under the statutes. The broker intended to execute the petitioner's order. The Sales Act allows delay of delivery. The Revenue Act does not prevent the petitioner from keeping 800 shares of stock which he owes to the broker when the broker owes him 800 shares of the same stock.

So holding, the judgment of the Tax Board is affirmed.